# Exhibit B

# GENERAL TERMS AND CONDITIONS
IMPORTANT! READ THIS ENTIRE AGREEMENT CAREFULLY



## 1. Application / Scope

The following terms and conditions shall apply to all purchases of jet fuel and other related products and services between Associated Energy Group, LLC ("AEG"), including AEG's subsidiaries and trade names (Mariah Fuels, Mariah Flight Services, AEG Fuels, and AEG Aviation Services), and Customer, including Customer's associates, affiliates, representatives, sub-contractors, directors, officers, employees, agents and volunteers (collectively "Customer"). These General Terms and Conditions shall constitute binding terms and conditions to any agreement between Customer and AEG, and are being provided to Customer conditioned upon Customer's acceptance, without modification, of all the terms, conditions, and notices set forth herein and Customer's compliance with any other, non-conflicting terms set forth in any other document signed by Customer relating to the purchase of Services by Customer from, or through any arrangements made by, AEG, unless otherwise stated in writing. In the event of a conflict between these General Terms and Conditions and any additional, different or conflicting terms or conditions contained in any application, invoice, purchase order or other document issued by or to Customer hereafter or contemporaneously herewith, these General Terms and Conditions shall prevail.

## 2. Customer Representations / Responsibilities

**2.1** Customer warrants and represents that: (a) Customer is at least (18) years of age, if an individual, and if a business, Customer is legally authorized to do business in its state/country of operation and is in compliance with all applicable laws, regulations, codes and ordinances in performing such business; (b) the person signing any agreement with AEG on behalf of Customer possesses the legal and corporate authority to create a binding legal obligation and authority to accept the Terms and Conditions hereunder; (c) all information supplied by Customer to AEG, through any forum, including AEG's website, is true, accurate, current and complete; and (d) Customer will safeguard its account information with AEG and will supervise and be responsible for any use of Customer's account by anyone other than Customer.

**2.2** Customer acknowledges that AEG fully complies with the United States sanctions laws and regulations enforced by the United States Department of Treasury's Office of Foreign Assets Control (OFAC), and warrants and represents that: (a) neither Customer nor any aircraft it operates is owned in whole or part by a Specially Designated National (SDN) as defined by 31 C.F.R. § 515.306; (b) it will not allow SDNs to travel as passengers on Customer's aircraft; and (c) it will not order fuel for any aircraft owned or operated by an SDN or any flight with a destination of Iran, North Korea or Crimea.

**2.3** Customer acknowledges that AEG retains and reserves its right to deny its Services to Customer at any time and for any reason, including without limitation, for any violation of AEG's Terms and Conditions, any violation of law regardless of whether or not Customer is prosecuted for this violation, and if prosecuted, regardless of the eventual disposition of the case, and any initiation of bankruptcy by Customer.

**2.4** Customer shall be solely responsible for the lawful transfer of all jet fuel to Customer's aircraft(s) (including but not limited to operating all appropriate switches, valves and fuel quantity indicators on Customer's aircraft), or any Customer fuel holding facility provided for hereunder, regardless of whether AEG undertakes any part of such transfer. Further, Customer shall comply with all provisions of local airport regulations relating to the operation of its aircraft(s) or any Customer fuel holding facility, including all applicable codes, regulations, governmental ordinances, statutes and governmental authority.

**2.5** In addition to sections 10.5 and 13 below, Customer agrees to indemnify, defend, and save AEG and its respective members, officers, directors, employees, spouses, legal representatives, agents, successors, parent, affiliates, subsidiaries and assigns harmless from and against any and all losses, liabilities, claims, damages and costs (including reasonable attorneys' fees and costs) which may arise out of or relate to Customer's actions or omissions in the performance by Customer of the operations, activities, or transfer of jet fuel as described in this subsection, regardless of whether or not any of the foregoing operations, activities, or transfer of jet fuel is performed by personnel of AEG.



## 3. Fuel

**3.1** AEG warrants that any and all quantities of "Fuel" (as defined in section 3.3) purchased by Customer from or through AEG shall be measured and determined based upon meter readings at the delivery location at the time of delivery. Customer acknowledges and agrees that no adjustment for surrounding or ambient temperatures shall be made to Fuel quantities regardless of circumstances, unless otherwise determined by AEG in its sole and absolute discretion.

**3.2** AEG warrants that any Fuel supplied pursuant to a purchase order or other agreement with Customer subject to these General Terms and Conditions shall meet one of the following specifications:

   a. Jet Fuel: (i) Grade Jet A-1, Joint Fueling System Check List, "Aviation Fuel Quality Requirements for the Jointly Operated Systems," Kerosene Type Fuel, latest issue; (ii) ASTM Standard D 1655, "Specification for Aviation Turbine Fuels" Jet A/Jet A-1, latest issue; (iii) British Ministry of Defense Standard DEF STAN 91-91, Turbine Fuel, "Kerosene Type," Jet A-1, latest issue; (iv) IATA Guidance Material for Aviation Turbine Fuels Specifications, Jet A/Jet A-1, latest issue; (v) Canadian specification Can/CGSB-3.23, "Aviation Fuel, Kerosene Type" Jet A/Jet A-1, latest issue; Grade TS-1 and RT:GOST10227-86 "Jet Fuel Specifications," latest issue; (vi) Mexican Turbine Fuel Normative, NMX-L-004-1194-SCFI or (vii) Chinese No. 3 Jet Fuel, according to GB6537, latest issue.

   b. Aviation Gasoline: ASTM D-910, latest revision, Grade 100LL and 100; Def Stan 91-90 Grades 100LL and 100.

**3.3** Subject to applicable laws, regulations, codes, ordinances and approval by applicable authorities, Customer's right to reasonably inspect and test Fuel purchased pursuant to these Terms and Conditions shall be performed at Customer's own expense at the time of Fuel delivery and prior to accepting such Fuel delivery. In the event Customer receives any non-conforming Fuel or Fuel delivery, Customer shall have the right, prior to acceptance and by written notice to AEG, to either reject such Fuel or require its correction. If any Fuel is rejected by Customer or a request to correct has been provided to AEG, AEG has the right and opportunity to inspect such alleged non-conforming Fuel and to insure that such Fuel has not been modified, altered, combined with other products, stored, or used in violation of applicable industry standards. After AEG has received written notice of non-conformity and been provided an opportunity to inspect as set forth above, any Fuel that does not conform to the quality and specifications shall be corrected or removed at AEG's expense. However, removal of Fuel under any other circumstances shall be at Customer's sole expense. Any and all claims of non-conformity for quality, quantity or otherwise must be made within ten (10) days of delivery.

**3.4** THE LIMITED WARRANTY STATED ABOVE IS THE ONLY WARRANTY GIVEN BY AEG FOR FUEL. AEG DISCLAIMS ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

**3.5** If Fuel does not conform to AEG's limited warranty, the sole obligation of AEG is to (a) replace the non-conforming Fuel with conforming Fuel, or (b) removal of the non-conforming Fuel and cancellation of the invoice for that Fuel or refund of the amount paid for that Fuel.  AEG will be reasonably prompt in its actions hereunder.

## 4. Delivery, Title, and Risk of Loss

All sales of Fuel shall be, as applicable, either "Into Wing" or "Into Storage" transactions. As used hereunder, "Into Wing" transactions means that (a) delivery shall be complete when the Fuel is delivered into the fuel tanks of Customer's aircraft and (b) title to and risk of loss for the Fuel shall pass from AEG to Customer after the Fuel has passed through the connecting hoses into the fuel tanks of such aircraft. As used hereunder, "Into Storage" transactions means that (a) the Fuel shall be delivered into the appropriate storage tank(s) of Customer at or near the designated airport or Customer facility and (b) title to and risk of loss for the Fuel delivered hereunder shall pass from AEG to Customer after the Fuel has passed through the connecting  hoses into the appropriate storage tank(s).

## 5. Pricing

**5.1** Pricing and other charges for Fuel shall be established from time to time solely by AEG in U.S. Dollars, and such price or charge shall be exclusive of Taxes (as defined in Section 6 below). Any supply agreement, proposal, purchase order and/or invoice, including any addendums, amendments, or modifications, whether issued directly by AEG and/or any of its parents, subsidiaries or affiliates, is subject to these General Terms and Conditions, as they may be amended from time to time.

**5.2** AEG reserves the right to increase or decrease prices and quotations, including, without limitation, taxes and fees, at any time, regardless of whether set forth in any proposal, purchase order and/or invoice, without notice due to market variations, exchange rate fluctuations and/or for happening of any event which may cause the price(s) of Fuel to increase.

**5.3** If AEG's cost of supplying Fuel or other Services to Customer increases as a result of AEG being unable to obtain supplies of Fuel or Services from its normal sources and recognized routes for such supplies, or otherwise due to circumstances beyond AEG's control, including being unable to obtain commercially reasonable terms, AEG shall have the right to give Customer written notice of its intent to increase the price payable at any affected delivery location by adding a surcharge (or an estimate of such surcharge if an exact amount cannot be reasonably ascertained) regarding such increase and/or change in price terms. The above surcharge shall be effective upon AEG's notice of same as provided for herein. Customer shall thereafter have the right to give written notice to AEG within ten (10) days of AEG's notice to withdraw any affected delivery location. Customer's withdrawal of the affected delivery location shall be effective twenty (20) days after the date of Customer's notice of withdrawal as provided for herein. Any price change caused by official government action, whether domestic or foreign, shall be effective from the date of the official government action and shall not be subject to any notice as provided for herein.

**5.4** AEG reserves the right to charge a minimum volume processing fee of up to $50 for fuel uplifts less than 500 USG.

**5.5** Customer also agrees to pay AEG an administrative fee equal to 10% of all non-aviation fuel items including but not limited to ancillary services such as ground handling, catering and transportation. Customer further agrees to pay, discharge and/or reimburse AEG for (i) cash and credit advances and fees; and (ii) all additional third-party charges and disbursements incurred for Customer's benefit.

## 6. Taxes

**6.1** In addition to the price for Fuel, Customer shall also pay to AEG all duties, taxes, fees or other charges (by way of example and not an exhaustive list: governmental taxes, sales tax, use tax, VAT, GST, mineral oil tax, or any other tax, license fees, inspection fees, airport fees, or any other fees related to the buying, selling, loading and unloading of aviation fuel) ("Taxes"), whether foreign or domestic, now or hereafter assessed, imposed or levied relative to Customer's purchase of Fuel. Any estimate of Taxes contained in any proposal, purchase order and/or invoice is for information purposes only, and its applicability may vary according to the laws of any particular state, country or nation. Omission or failure to add such tax, governmental tax, duty, assessment, fee or other charge to any proposal, purchase order and/or invoice shall not relieve Customer from liability therefrom. In the event any additional tax, governmental tax, duty, assessment, fee or other charge is assessed to AEG, or deemed applicable by the local authority, AEG may assess such additional taxes or fees to Customer through supplementary invoices which Customer agrees to pay.

**6.2** It is the Customer's responsibility to ensure that all exemption documentation is presented for any tax-exempt flight directly to the fueler and that the exemption is recorded properly at the time of the fueling. In the event that AEG is charged the taxes for any exempt flight, AEG will pass through to the Customer those taxes as charged. Customer, at its discretion, may seek to reclaim taxes for an exempt flight through the taxing authority that assessed those taxes. AEG will not be able to submit a request for credit, or reclaim any international taxes that were charged in error.

**6.3** Customer agrees to indemnify and hold AEG harmless from and against any claim, loss, liability, damage or expense (including attorneys' fees and costs) AEG may incur due to Customer's failure to pay invoiced Taxes.

## 7. Invoices

AEG shall invoice Customer for all sums due and owing for Services furnished to Customer, including but not limited to Fuel and Taxes, pursuant to these General Terms and Conditions or any other non-conflicting term and condition provided for by written agreement between the parties. Invoices are payable on or before that due date specified in the invoice. Any claims or disputes arising out of or relating to any invoice must be delivered to AEG by hand delivery, registered mail, overnight courier, electronic mail or facsimile within ten (10) days of the invoice date. In the event Customer fails to dispute the invoice within the ten (10) days, the invoice shall be deemed correct and payable by Customer. All prices included in any invoice, including taxes, fees, and assessments or otherwise, shall be denominated in U.S. Dollars, unless otherwise specifically set forth therein. Any delay by AEG in invoicing Customer shall not relieve Customer of its payment obligations under these General Terms and Conditions. Invoices sent by mail, fax, email or other electronic transmission shall all be considered original invoices.

## 8. Payments

**8.1** All payments to AEG shall be made in U.S. Dollars, regardless of what denomination is set forth in any invoice, payable to the account of AEG as set forth and/or indicated on any applicable invoice. Unless otherwise agreed by written agreement between the parties, Customer must make all payments prior to the delivery of any Services, including Fuel, sold pursuant to these Terms and Conditions. The delivery of Services, including Fuel, shall be stayed/tolled until such time as AEG receives full payment from Customer (in cleared funds), and AEG shall not be responsible for any damages, including (without limitation) consequential, incidental and/or special damages, to Customer caused by any delay in delivery of any Services due to non-payment. Past due amounts shall accrue interest at 1.5% per month. Additionally, as a late fee, AEG charges $100 per month per invoice not paid in full. These charges shall not to exceed the maximum rate allowed by applicable law. Waiver by AEG of any applicable interest charge or fee on any particular invoice or past due amount shall not be construed as a waiver by AEG of its right to impose such charge or fee on other or subsequent deliveries, invoices or past due amounts.

**8.2** In the event multiple invoices or obligations are outstanding, AEG reserves the right to apply Customer payments to any outstanding invoice or obligation of Customer in any manner it chooses in its sole discretion. Once any invoice or obligation of Customer is turned over to outside counsel for collection, Customer is liable to pay all reasonable attorney fees and costs incurred by AEG in collecting any unpaid invoices, amounts or obligations owed by Customer, regardless of whether a lawsuit is eventually filed. In addition to the rights set forth in these General Terms and Conditions and/or all other remedies and rights available to it under the law, whether it be in law or in equity, AEG reserves the right to cease any deliveries or provide any Services to Customer if Customer fails to make any payment provided for herein, and may demand payment of all outstanding invoices or monetary obligations. AEG's right to cease any deliveries of Fuel or provision of Services to Customer applies to any Customer for which credit terms have been extended pursuant to Section 9 below, without limitation, but in particular if Customer's outstanding balances exceed the applicable credit limits and AEG becomes insecure with regard to Customer's financial condition or creditworthiness.

**8.3** Notwithstanding any dispute including, without limitation, disputes regarding the quality or quantities of Fuel, accuracy of amounts owed or any other matier, Customer must timely pay the full amount due under any invoice regardless of whether Customer disputes the whole or part of any amount due. Any disputes shall be resolved between AEG and Customer only after such payment has been made. Any refund due by AEG upon resolution of such dispute shall be paid to Customer.

**8.4** Customer's complete compliance with these General Terms and Conditions, notwithstanding any terms to the contrary in any written agreement or purchase order, shall be a condition precedent to AEG's obligation to deliver Services or Fuel. If Customer fails to perform any of the terms of these General Terms and Conditions, and if such default is not cured within ten (10) days of giving written notice to Customer, then AEG may immediately terminate the parties' contractual relationship. Customer shall also be in default, and subject to immediate termination, if Customer becomes insolvent, files a petition for bankruptcy or commences or has commenced against it proceedings relating to bankruptcy, receivership, reorganization, or assignment for the benefit of creditors. In any such event, Customer remains obligated to pay in full for Fuel and/or Services received.

## 9. Credit Application / Terms

**9.1** With the information provided by Customer in any application, AEG shall evaluate the creditworthiness of the Customer.  At its sole discretion, AEG shall determine, from time to time, the appropriate credit limit and credit terms for Customer and, as necessary, may curtail, modify or eliminate any credit availability, modify credit terms, and/or require security in the form of a cash security deposit, letter of credit, guarantee or other form as AEG deems appropriate, before initiating or continuing to provide Services and/or Fuel.  Any extension of credit by AEG to Customer shall be subject to these General Terms and Conditions, as well as any non-conflicting term or condition set forth in Customer's credit application or other written agreement between the parties.

**9.2** In furtherance of Section 9.1 above, and in accordance with Section 17 below, Customer grants AEG and its agents, employees, representatives, parent, subsidiaries, and affiliates the right to obtain and request from any person, source, credit bureaus, financial institutions, credit unions, banks or otherwise any information regarding Customer's and/or any personal guarantor(s)' financial status, credit history, credit score, deposits, balances, income sources, assets, debts, security interests and mortgages.

**9.3** It is Customer's responsibility to provide and maintain accurate information to AEG, including any information AEG deems necessary to conduct a credit analysis.

**9.4** In the event AEG, at Customer's request, provides Customer a good faith estimate of the unbilled amount due or any amount remaining on Customer's credit limit, Customer acknowledges any estimate is made in good faith and may deviate from actual unbilled amounts.  Customer and AEG agree any good faith estimate is not binding upon AEG.

## 10. Netting of Payment Terms

As additional security for all amounts due from Customer to AEG for Services or Fuel, Customer hereby grants AEG the right for AEG to set-off any amounts AEG may owe Customer against any obligations of Customer owed to AEG for Services or Fuel.

If, as of any business day, AEG desires to exercise its rights of set-off related to money owed by AEG and Customer to each other for goods, services or fuel previously provided, AEG shall provide written notice that it is exercising its right to set-off by sending the Customer a written statement showing all the transactions between AEG and Customer with the amounts owed by AEG netted against the amounts due by Customer to AEG as of a date certain ("Netting Statement").  Customer shall credit AEG's account for all amounts due to Customer within two (2) business days after receipt of the Netting Statement.

## 11. Security/ Liens

**11.1** Customer, in consideration of any Services or Fuel furnished and any credit terms extended to Customer (including, without limitation, any future advances by AEG to Customer), hereby grants to AEG a first priority security interest for all unpaid Services or Fuel furnished by AEG, in Customer's accounts receivables (in the event Customer does not own its aircraft), or in the aircraft for which Services and Fuel were furnished (in the event Customer owns the aircraft it operates) (collectively, "Collateral"), until such time as all amounts due from Customer to AEG are paid in full. Should AEG determine a separate, written security instrument is required, Customer agrees to promptly execute and deliver such further instruments and documents, as a condition of AEG continuing to provide Services or Fuel. Such instrument (including but not limited to a financing or other statement under the UCC or other applicable, foreign law) may AEG to exercise and enforce its rights and remedies hereunder and under the UCC with respect to the Collateral. Moreover, such written security instrument may authorize AEG to file one or more financing, continuation or similar statements and amendments relative to all or any part of the Collateral without the further signature or written consent of Customer (or the aircraft owner if different from the Customer), where permitted by law.

**11.2** In addition to but separate from any security interest AEG may have, Customer acknowledges and agrees that AEG (or any affiliated company) may, in addition to all other rights and remedies set forth herein or in law or equity, invoke any and all statutory or equitable lien rights (as well as the lien rights of any participating aviation merchants who furnished lienable Services to Customer) regarding the enforcement of AEG 's right to payment under this Agreement.  Customer hereby authorizes AEG to file one or more claims of lien for (a) the unpaid charges, (b) late fees at 18.0% APR from the date of the oldest unpaid services, (c) aircraft title search fees, (d) registration and filing fees, (e) collection costs, and (f) attorney fees.  These claims of lien may be filed against any aircraft for which (i) Services or Fuel are or were furnished and (ii) charges were incurred and made to Customer's AEG account. Customer represents and warrants that Customer either owns the aircraft for which Services or Fuel are purchased, or is lawfully possessed of the aircraft with the owner's express consent to purchase goods and services for the aircraft, such as those Services (including Fuel) furnished by AEG.

**11.3** In recognition of the international and mobile nature of aviation and aircraft, and the necessity for legal certainty, predictability and convenience, and to avoid filing liens in multiple jurisdictions, Customer agrees that any lien filed by AEG shall be based, at AEG's sole discretion, upon the aircraft lien statute of the State of Texas (Texas Property Code § 70.301, et al.), or the aircraft lien statute of another state or country in which the aircraft is registered or based, and consents to jurisdiction there. Such consent is given without regard to where (a) the Customer resides or does business, (b) the aircraft owner resides or does business,
(c) the aircraft was at the time such services were furnished or charges were incurred, (d) the aircraft is registered, or (e) jurisdiction may otherwise be proper. Any aircraft lien may also be filed at the International Registry, pursuant to the Convention on International Interests in Mobile Equipment. The Customer shall be liable to AEG for all costs and expenses of lien preparation, filing and registrations, collection costs and litigation including, but not limited to, filing fees, late charges, attorney fees, court and discovery costs and/or other costs incurred by AEG in securing, protecting, enforcing or defending its rights hereunder.

**11.4** If the debt remains unpaid AEG may thereafter institute an action against the Customer (and/or the aircraft owner) to enforce the security agreement(s), foreclose the lien(s) and to collect the debt. Customer agrees that venue for enforcement of this Agreement or any lien, or action predicated upon such lien or financing statement, shall be in the county courts of Harris County, Texas, USA, regardless of (a) the amount in controversy, (b) where the Customer is domiciled or does business, or (c) where the services were rendered, and excluding any conflict-of-laws rule or principle that might refer the governance or the construction of these terms to the law of another jurisdiction. Customer's purchase of fuel or other services from AEG, or use of its AEG credit account indicates Customer's acceptance of these terms and conditions, and its waiver of all objections to the foregoing choice of law or forum. Service of process by certified mail, return receipt requested, postage prepaid and mailed to Customer at the address on the application shall be sufficient to confer jurisdiction regardless of where Customer is geographically located or does business. AEG reserves the right to modify or amend these terms from time and all charges made after such a change shall be subject to that change.

**11.5** CUSTOMER AGREES TO INDEMNIFY, DEFEND, AND SAVE AEG AND ITS MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, SPOUSES, LEGAL REPRESENTATIVES, AGENTS, SUCCESSORS, PARENT, AFFILIATES, SUBSIDIARIES AND ASSIGNS HARMLESS FROM AND AGAINST ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES AND COSTS (INCLUDING WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND COSTS) WHICH MAY ARISE AS A RESULT OR IN CONNECTION WITH ANY FUEL OR SERVICES PROVIDED OR ANY LIEN PLACED AGAINST ANY AIRCRAFT FOR WHICH CHARGES WERE INCURRED AND MADE TO CUSTOMER'S AEG ACCOUNT. IN NO EVENT SHALL AEG BE LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF AEG HAS BEEN ADVISED OF THE POSSIBILITY THEREOF.

**11.6** Upon the occurrence of an event of default by the Customer under these Terms and Conditions, AEG shall be entitled to pursue any and all rights and remedies secured hereby and available under law, in equity or otherwise, including (without limitation), to accept the Collateral in full or partial satisfaction of the obligations of Customer or to retain and/or repossess and sell, without court order, the Collateral at public or private sale in accordance with Article 9 of the Uniform Commercial Code, whereby Customer shall sign and deliver to AEG documents of title to the Collateral if necessary. Customer shall be responsible to pay all reasonable attorneys' fees and costs of repossession, insurance, storage and sale of the Collateral in the event of default.

## 12. Fuel Cards

AEG may in its sole discretion issue fuel card(s) or charge cards to Customer (collectively, the "Cards") in order to enable Customer to purchase Fuel or Services, subject to availability, on credit at AEG locations.  The Cards shall be valid upon receipt, and through the expiration date printed on their face. Customer acknowledges that the Cards are non-transferable and agrees not to permit the Cards to be used by any person or entity other than Customer.  By using the Cards, Customer agrees to these General Terms and Conditions, and specifically agrees to pay for all fees, interest and penalties billed to Customer's account as a result of charges incurred by Customer. Payment for such fees and other charges will be made in accordance with these General Terms and Conditions, and Customer specifically agrees that failure to timely pay the balance due on the Cards may be used as the basis for filing a lien against any aircraft Customer's card is used to purchase Services or Fuel.  Customer is responsible for obtaining any permission from or providing any notice to owner regarding AEG's lien rights by means of Customer's failure to pay the balance due on the Cards.  Customer shall insure the information printed on the Cards or relating to such Cards is and remains accurate. Customer's failure to provide accurate information may cause Cards to be suspended. Furthermore, Customer agrees to notify AEG immediately if a Card is lost or stolen, or if Customer suspects such Card is being used without its permission. Customer shall be responsible to pay for all charges incurred prior to such notification.  AEG may in its sole discretion, revoke Customer's right to use the Card at any time, with or without cause. Customer may cancel the Cards at any time by providing written notice to AEG.

## 13. Force Majeure

AEG shall not be required to perform any obligation to Customer if AEG's performance is delayed or precluded by any conditions beyond AEG's reasonable control; AEG shall promptly inform Customer of any such condition. In no event shall such condition excuse Customer's payment for Services, including Fuel that has been provided to Customer.

## 14. Disclaimer of Warranty / Limitation of Liability

AEG MAKES NO WARRANTY OR REPRESENTATION OF ANY KIND OR CHARACTER, WHETHER EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO ANY FUEL AND/OR SERVICES SOLD TO CUSTOMER HEREUNDER. AEG EXPRESSLY DISCLAIMS, AND CUSTOMER HEREBY WAIVES, ALL WARRANTIES, GUARANTEES, OBLIGATIONS, LIABILITIES, RIGHTS AND REMEDIES WITH RESPECT TO SAID FUEL AND SERVICES, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, INCLUDING BUT NOT LIMITED TO (a) AN IMPLIED WARRANTY OF MERCHANTABILITY, (b) ANY IMPLIED WARRANTY ARISING FROM THE COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OR TRADE OR (c) ANY IMPLIED WARRANTY OF FITNESS. UNLESS CAUSED SOLELY BY AEG'S GROSS NEGLIGENCE OR INTENTIONAL ACT, AEG SHALL HAVE NO LIABILITY TO CUSTOMER RELATIVE TO ANY CLAIM, LOSS OR DAMAGES, OF ANY KIND OR CHARACTER, ATTRIBUTABLE TO THE FUEL AND/OR SERVICES FURNISHED BY AEG HEREUNDER. AEG AND CUSTOMER AGREE THAT AEG SHALL NOT BE LIABLE DIRECTLY OR INDIRECTLY FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL, INDIRECT OR EXEMPLARY DAMAGES IN ANY WAY ARISING FROM THE SALE, HANDLING, SUPPLY, OR USE OF THE GOODS AND SERVICES SOLD, INCLUDING FUEL, OR FROM ANY OTHER BREACH OF THESE TERMS AND CONDITIONS, ANY PURCHASE ORDER, QUOTATION, PROPOSAL OR ANY OTHER AGREEMENT BETWEEN AEG AND CUSTOMER. IT SHALL BE THE RESPONSIBILITY OF CUSTOMER TO MAKE ANY AND ALL INSPECTIONS AND INVESTIGATIONS AS CUSTOMER DEEMS NECESSARY TO ASCERTAIN THE INTEGRITY, FITNESS OR SUITABILITY OF THE GOODS AND SERVICES, INCLUDING FUEL, HEREUNDER.

## 15. Indemnification

CUSTOMER AGREES TO INDEMNIFY, DEFEND, AND SAVE AEG AND ITS RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, SPOUSES, LEGAL REPRESENTATIVES, AGENTS, SUCCESSORS, PARENT, SUBSIDIARIES AND ASSIGNS HARMLESS FROM AND AGAINST ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES AND COSTS (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND COSTS) WHICH MAY ARISE AS A RESULT OF ANY CLAIM BROUGHT BY ANY THIRD PARTY IN CONNECTION WITH ANY FUEL OR SERVICES PROVIDED HEREUNDER. IN NO EVENT SHALL AEG BE LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF AEG HAS BEEN ADVISED OF THE POSSIBILITY THEREOF.

## 16. Export Controls and Sanctions

Customer acknowledges that no Fuel or Services may be used in violation of U.S. export control and sanctions laws, including but not limited to sanctions programs administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") and the Export Administration Regulations ("EAR"), 15 C.F.R. § § 730-774. Customer expressly agrees not to reexport and shall not directly or indirectly release or make available any Fuel to any Restricted Country or to any entity incorporated in, or otherwise owned or controlled by a Restricted Country, where prohibited by U.S. law. In addition, Customer expressly agrees not to release or make available any fuel to any a Specially Designated National (SDN) as defined by 31 C.F.R. § 515.306. Customer further expressly agrees not to use Fuel in support of travel to any Restricted Country, unless authorized by a general or specific license. A "Restricted Country" shall mean any country, at the time Fuel is supplied, that is subject to comprehensive sanctions administered by OFAC and/or where a license would be required to export Fuel to such country under the EAR.

## 17. Third Parties

AEG has developed and continues to develop a worldwide network of persons and entities to provide AEG's Services, including Fuel, requested by Customer ("Third Party Providers"). Third Party Providers are independent contractors and AEG does not have the right to supervise and does not supervise details of their operations. AEG shall not be liable for the acts and omissions of any such Third-Party Providers. AEG's sole obligations shall be to use ordinary care in the selection of any such Third-Party Providers, and to require such Third-Party Providers to act in accordance with AEG's Compliance Program. AEG Disclaims all liability for any acts or omissions of any Third-Party Providers, including, without limitation, agents, independent contractors, subcontractors, transporters, into-plane agent or service providers.

## 18. Confidentiality

Customer acknowledges that all terms of any proposal, contract or other agreement with AEG, other than these Terms and Conditions, including, without limitation, pricing information and/or any other terms relating the supply of Fuel or Services, are confidential. Neither Customer nor AEG shall disclose any such information to any third party without the prior written consent of the other party, unless required and mandated by court order or other applicable law.

## 19. Customer Information

**19.1** This privacy policy covers AEG's collection or use of Customer's personal information (including, without limitation, first and last name, corporate information, telephone numbers, postal and email addresses, fax numbers, billing information and credit information), which is collected through or in connection with the Fuel or Services provided to Customer, or if viewing these Terms and Conditions via AEG's website, in connection with the use of the website. For the purposes of this policy, "this website" means www.aegfuels.com, which may link to other AEG websites.

**19.2** AEG collects and uses personal information in order to, without limitation: monitor quality control and insure compliance with any and all applicable laws, regulations, codes and ordinances; respond to queries or requests submitted by Customer; process orders or applications submitted by Customer; manage Customer accounts; administer or otherwise carry out AEG's obligations in relation to any agreement Customer may have with AEG, including these Terms and Conditions; anticipate and resolve problems with any Fuel or Services supplied to Customer; process Customer's credit application pursuant to Article 9 above and/or analyze Customer's credit worthiness, risks or other matter relating to any extension of credit by AEG to Customer; and create products or Services that may meet Customer's needs.

**19.3** Customer grants AEG the right to disclose any personal information relating to Customer to: any agents, employees, representatives, parent, subsidiaries, affiliates, assigns, and Third Party Providers of AEG which may perform Services arising out of or relating to Customer's account; credit bureaus and/or reporting agencies; any person, entity or governmental officer/agency/authority as required or permitted by law; and/or any person or entity as AEG may deem necessary or appropriate.

**19.4** AEG reserves the right to demand any and all outstanding monetary obligations due and payable immediately, without regard to any extension of credit or otherwise, in the event AEG determines and/or discovers that the information provided by Customer is inaccurate, fraudulent, or misrepresented in any material respect, regardless of any intent or willful conduct of Customer.

## 20. Waiver of Jury Trial

THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO JURY TRIAL IN CONNECTION WITH ANY LAWSUIT BROUGHT BY ANY PARTY ARISING OUT OF OR RELATING TO THIS AGREEMENT.

## 21. Notices

All notices, requests, demands, or other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given upon receipt in person, or by overnight courier, facsimile, e-mail transmission, or upon the expiration of three (3) days after the date sent via certified mail-return receipt requested. All notices sent by mail, courier service or other related service shall be sent to Associated Energy Group, Inc., 3808 World Houston Parkway, Suite B, Houston, Texas, 77032, and if to Customer, at the address provided by Customer.  Either party may by written notice to the other change the address, telephone numbers or facsimile number, or electronic messaging system details to which notices or other communications are to be sent.

## 22. Failure to Enforce

Failure by AEG to enforce any of its rights hereunder shall not constitute a waiver of such rights or any other rights hereunder. No waiver or amendment of any of the provisions herein shall be effective unless it is in writing, and signed by AEG and Customer. Any such written waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be continuing or future waiver.

## 23. Amendments

AEG may revise these Terms and Conditions at any time without notice. Customer should request updated Terms and Conditions from AEG or revisit this site periodically to make sure Customer is aware of the most recent Terms and Conditions because any such modification, amendment or revision will be binging on Customer. Customer's use of the website, or purchase of Fuel or Services after such changes constitutes Customer's agreement to any such changes, amendments, modification or revisions.  If viewing these Terms and Conditions on AEG's website, Customer is further advised to check each page you visit on this site. Some locations may have special additional Terms and Conditions that apply to use of or interaction with that location. The terms and conditions applicable to any given page on this site may also be charged at any time without notice. Your use of that location constitutes your acceptance of those special additional terms and conditions.

## 24. Binding Effect / Assignment

These General Terms and Conditions shall be binding upon AEG and its Customers, their associates, affiliates, representatives, sub-contractors, directors, officers, employees, agents and volunteers, successors and assigns. Customer shall not assign any right or obligation arising out of these Terms and Conditions without the prior written consent of AEG. Any attempt by Customer to assign or delegate any obligation hereunder shall be deemed null and void. AEG reserves the right to assign or pledge any amounts due from Customer, at any time, in AEG's sole discretion, without prior notice to, or consent of, Customer.

## 25. Headings

The headings used herein are for convenience only and shall not control or affect the meaning or construction or limit the scope or intent of any of the provisions hereunder.

## 26. Severability / Reformation

The invalidity or unenforceability, in whole or in part, of any covenant, promise or undertaking, or any section, subsection, paragraph, sentence, clause, phrase or word or of any provision hereunder by any tribunal siting, in whole or in part, for that purpose, shall not affect the validity or enforceability of the remaining portions thereof. Moreover, the parties hereby agree that any invalid provision shall be reformed by the tribunal so as to be valid and enforceable to achieve as nearly as possible the original purpose and intentions of the parties.

## 27. Governing Law, Jurisdiction and Venue

These General Terms and Conditions, including any other written agreement between the parties, are deemed to have been delivered in the state of Texas and shall in all respects be governed by, and construed, enforced and governed in all respects in accordance with the internal substantive laws of the state of Texas applicable to contracts made in such state by residents thereof and as if performed entirely within such state, including all matters of construction, validity and performance. Any agreement between AEG and its Customer, which includes or incorporates these General Terms and Conditions by reference, and any amendment to such agreement, may be executed in several counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same instrument. By its receipt of AEG's Services or Fuel, Customer consents to resolving any dispute arising hereunder within laws of the State of Florida, or the State of Texas, USA, at AEG's sole option. Venue of any lawsuit or legal proceeding in Florida shall be in the state or federal courts governing Dade County, Florida, or in the state or federal courts governing Harris County, Texas, unless the law of some other jurisdiction may be mandatorily applicable to proceedings taken by AEG for the enforcement of its rights hereunder; provided that any remedies herein provided which shall be valid under the laws of the jurisdiction where proceedings for the enforcement hereof shall be taken shall not be affected by any invalidity hereof under the laws of the State of Texas.

## 28. Attorney Fees

In the event of any controversy, claim, dispute or litigation arising under or relating to these General Terms and Conditions, AEG shall be entitled to recover all reasonable costs, expenses and attorneys' fees incurred in connection with such litigation. This provision is intended to supplement, not supersede, the fees and costs allowable under Sections 8 and 10 above.

## 29. Survival

Any termination of these General Terms and Conditions shall not affect the ongoing provisions of these General Terms and Conditions, which shall survive such termination in accordance with their terms.

## 30. Extraterritorial Effect of Texas Property Code 70.301

By its receipt of AEG's Services and Fuel, Customer indicates its explicit agreement that Texas Property Code 70.301, entitled "Aircraft Repair and Maintenance Lien," applies to Customer's purchase of Services and/or Fuel (as those terms are defined above), from AEG, notwithstanding that the fueling and provision of other related services may take place outside the State of Texas.